

## KPMG Peat Marwick LLP

Financial Services

| | |
|---|---|
| To: Jeffrey N Stein | Date: May 26, 1998 |
| From: Gregg W Ritchie<br>Los Angeles/Woodland Hills | Steno: gwt<br>Ref: a\use:s\gic:newmcats\cois\c1<br>Looc |
| cc: Distribution List | |

*(Handwritten note at top right: §7203 Criminal / Circular 230 / Larry Delap is adamant about not making this decision based solely on financial decision)*

**OPIS Tax Shelter Registration**

Attached is a memorandum from Jeff Zysik (Tax Innovation Center) concerning the potential financial consequences associated with failing to register a tax shelter under IRC section 6111 For purposes of this discussion, I will *assume* that we will conclude that the OPIS product meets the definition of a tax shelter under IRC section 6111(c)

Based on this assumption, the following are my conclusions and recommendation as to why KPMG should make the business/strategic decision not to register the OPIS product as a tax shelter My conclusions and resulting recommendation are based upon the immediate negative impact on the Firm's strategic initiative to develop a sustainable tax products practice and the long-term implications of establishing a precedent in registering such a product.

<u>First, the financial exposure to the Firm is minimal</u>  Based upon our analysis of the applicable penalty sections, we conclude that the penalties would be no greater than $14 000 per $100 000 in KPMG fees  Furthermore as the size of the deal increases, our exposure to the penalties decreases as a percentage of our fees  For example our average deal would result in KPMG fees of $360 000 with a maximum penalty exposure of only $31 000

This further assumes that KPMG would bear 100 percent of the penalty  In fact, as explained in the attached memo the penalty is *joint and several* with respect to anyone involved in the product who was required to register  Given that at a minimum Presidio would also be required to register our share of the penalties could be viewed as being only one-half of the amounts noted above  If other OPIS participants (e g Deutche Bank, Brown & Wood, etc ) were also found to be promoters subject to the registration requirements, KPMG's exposure would be further minimized  Finally any ultimate exposure to the penalties are abatable if it can be shown that we had reasonable cause

<u>Second, the rules under section 6111(c) have not changed significantly since they were imposed in 1984</u>  While there was an addition to section 6111 in the 1997 Tax Act it only applies to products marketed to corporate investors under limited

Proprietary Material
Confidentiality Requested

Permanent Subcommittee on Investigations
**EXHIBIT #3**

KPMG 0034964

KPMG Peat Marwick LLP

Page 2
Distribution List
May 28, 1998

circumstances. To my knowledge, the Firm has never registered a product under section 6111

**Third, the tax community at large continues to avoid registration of all products.**
Based on my knowledge, the representations made by Presidio and Quadra, and Larry DeLap's discussions with his counterparts at other Big 6 firms, *there are no tax products marketed to individuals by our competitors which are registered* This includes income conversion strategies, loss generation techniques, and other related strategies

Should KPMG decide to begin to register its tax products, I believe that it will position us with a severe competitive disadvantage in light of industry norms to such degree that we will not be able to compete in the tax advantaged products market

**Fourth, there has been (and, apparently, continues to be) a lack of enthusiasm on the part of the Service to enforce section 6111** In speaking with KPMG individuals who were at the Service (e g. Richard Smith), the Service has apparently *purposefully* ignored enforcement efforts related to section 6111 In informal discussions with individuals currently at the Service, WNT has confirmed that there are not many registration applications submitted and they do not have the resources to dedicate to this area

**Finally, the guidance from Congress, the Treasury, and the Service is minimal, unclear, and extremely difficult to interpret when attempting to apply it to "tax planning" products.** The Code section, regulations and related material were clearly written with a view toward the sale of "traditional" tax shelters That is, the rules anticipate that there will be the sale of a partnership interest by a promoter which purports to allow an investor to claim deductions significantly in excess of their investment While the rules are written broadly enough to arguably include OPIS and other purely tax planning products they are not easily applied to the marketing of an idea or strategy to a client which carries with it tax advantage

Although OPIS includes the purchase of securities by the investor the tax results are driven simply by an interpretation of the application of Code section 302 and the regulations thereunder When coupled with the Service s apparent lack of enforcement effort the lack of specific guidance is a further indication that the risk of noncompliance with the rules could be excused

KPMG 0034965

Proprietary Material
Confidentiality Requested

KPMG Peat Marwick LLP

Page 3
Distribution List
May 28, 1998

Based on the above arguments, it is my recommendation that KPMG does *not* register the OPIS product as a tax shelter. Any financial exposure that may be applicable can easily be dealt with by setting up a reserve against fees collected. Given the relatively nominal amount of such potential penalties, the Firm's financial results should not be affected by this decision.

In summary, I believe that the rewards of a successful marketing of the OPIS product (and the competitive disadvantages which may result from registration) far exceed the financial exposure to penalties that may arise. Once you have had an opportunity to review this information, I request that we have a conference with the persons on the distribution list (and any other relevant parties) to come to a conclusion with respect to my recommendation. As you know, we must immediately deal with this issue in order to proceed with the OPIS product.

Distribution List

Mark Springer
Doug Ammerman
Walter Duer

KPMG 0034966

Proprietary Material
Confidentiality Requested




**KPMG Peat Marwick LLP**

To: Gregg Ritchie  
Warner Center

Date: May 26 1998

From: Jeffrey C Zysik  
Washington National Tax - Tax Innovation Center

Steno: JCZ  
Ref: p:\users\gm-network\cats\005\61 1e xp doc

**Registration**

**Issue:** What is the financial consequence of failing to register a tax shelter, as required by section 6111 of the Internal Revenue Code (Code)?

**Answer:** Section 6111(a) requires a "tax shelter organizer" to register a tax shelter in the manner provided for by the Secretary not later than the first day on which the shelter is for sale. Failure to register a tax shelter as defined in sec 6111(c) may result in a penalty equal to the greater of $500 or 1 percent of the "aggregate amount invested" in the tax shelter[1] Sec 6707(a)(2) Pursuant to Temp Regs. 301 6707-1T Q/A 1 "aggregate amount" is determined in the same manner as prescribed in temp regs 301 6111-1T Q/A-21  Q/A-21 defines "aggregate amount" as the amount "to be received from the sale of interests in the investment and includes all cash, the fair market value of all property contributed, and the principal amount of all indebtedness received in exchange for interest in the investment"

There is no authority that treats the amount of the deduction allowable by reason of the investment as the "aggregate amount invested" for purposes of the sec 6707 penalty Furthermore, because the amount of deductions potentially allowable by reason of an investment in a tax shelter is a key concept in determining if a tax shelter must be registered under sec 6111(c) (it is used to calculate the tax shelter ratio see sec 6111(c)(2) and temp regs 301 6111-1T Q/A-5&6), sec 6707 could easily have referenced this amount as a factor in calculating the penalty Since sec 6707 does not reference the possible deductions allowable as a factor in determining the penalty the amount of deductions generated appears to be irrelevant in calculating the penalty

**Issue:** Who bears the burden of the penalty?

**Answer:** The liability is joint and several among all persons who had a duty to register Temp Regs 301 6707-1T Q/A-9

**Issue** Is there a reasonable cause exception to the penalty?

**Answer:** Yes, there is a reasonable cause exception to registration Sec 6707(a)(1) last sentence Existence of reasonable cause is a factual question All representations known (or

---

[1] Contrast this penalty to that applicable to confidential corporate tax shelters Failure to register a confidential corporate tax shelter (defined at 6111(d)) may result in a penalty equal to the greater of $10,000 or 50 percent (75 percent if the failure is intentional) of the fees paid to all promoters Sec 6707(a)(3)

KPMG 0034967
Proprietary Material  
Confidentiality Requested

KPMG Peat Marwick LLP

Page 23
Gregg Ritchie
Warner Center
May 28, 1998 ~~May 26, 1998~~

which should have been known) by a tax shelter organizer must be taken into account in determining if reasonable cause exists. A tax shelter organizer is deemed to know all representations known by sellers of the shelter Temp Regs 301 6707-1T Q/A-4

Issue   Are there other penalties which could apply in this circumstance?

Answer  It is also possible that the sec. 6700 penalty for promotion of an "abuse tax shelter" would apply This penalty is the lesser of $1 000 or 100 percent of the gross income derived (or to be derived) by the promoter for each activity related to the shelter The statute does not define "activity" and no regulations have been issued under this section. Sec 6700(a)

Issue   Did the sec. 6111 registration requirements change as a result of 1997 legislation?

Answer  Yes, but not with respect to the requirement to register a product which is marketed to individuals. The definition of a sec 6111 tax shelter was broadened with respect to corporate taxpayers Pursuant to new sec. 6111(d) if an entity plan, arrangement or transaction has a significant purpose of avoidance or evasion of federal income tax is offered under terms of confidentiality and the promoters may receive aggregate fees in excess of $100 000 the entity plan, arrangement, or transaction must be registered This provision does not apply to a product which is marketed to individuals provided it is not also offered to corporate taxpayers. Further even if offered to corporate taxpayers, 6111(d) registration is *not applicable* until regulations or other guidance is issued and, even then, would be applicable only if offered under conditions of confidentiality No such guidance has yet been issued

KPMG 0034968

Proprietary Material
Confidentiality Requested

## KPMG Peat Marwick LLP

To: Gregg Ritchie  
Warner Center

Date: May 26 1998

From: Jeffrey C Zysk  
Washington National Tax - Tax Innovation Center

Sent: JCZ

**Registration**

**Issue** What is the financial consequence of failing to register a tax shelter as required by section 6111 of the Internal Revenue Code (Code)?

**Answer:** Section 6111(a) requires a "tax shelter organizer" to register a tax shelter in the manner provided for by the Secretary not later than the first day on which the shelter is for sale. Failure to register a tax shelter as defined in sec 6111(c) may result in a penalty equal to the greater of $500 or 1 percent of the "aggregate amount invested" in the tax shelter.[1] Sec. 6707(a)(2). Pursuant to Temp Regs 301 6707-1T Q/A-1, "aggregate amount" is determined in the same manner as prescribed in temp regs 301 6111-1T Q/A-21. Q/A-21 defines "aggregate amount" as the amount "to be received from the sale of interests in the investment and includes all cash, the fair market value of all property contributed and the principal amount of all indebtedness received in exchange for interest in the investment."

There is no authority that treats the amount of the deduction allowable by reason of the investment as the "aggregate amount invested" for purposes of the sec 6707 penalty. Furthermore, because the amount of deductions potentially allowable by reason of an investment in a tax shelter is a key concept in determining if a tax shelter must be registered under sec 6111(c) (it is used to calculate the tax shelter ratio see sec 6111(c)(2) and temp regs 301 6111-1T Q/A-5&6) sec 6707 could easily have referenced this amount as a factor in calculating the penalty. Since sec 6707 does not reference the possible deductions allowable as a factor in determining the penalty, the amount of deductions generated appears to be irrelevant in calculating the penalty.

**Issue** Who bears the burden of the penalty?

**Answer:** The liability is joint and several among all persons who had a duty to register. Temp Regs 301 6707-1T Q/A-9

**Issue** Is there a reasonable cause exception to the penalty?

**Answer** Yes, there is a reasonable cause exception to registration. Sec 6707(a)(1) last sentence. Existence of reasonable cause is a factual question. All representations known (or

---

[1] Contrast this penalty to that applicable to confidential corporate tax shelters. Failure to register a confidential corporate tax shelter (defined at 6111(d)) may result in a penalty equal to the greater of $10,000 or 50 percent (75 percent if the failure is intentional) of the fees paid to all promoters. Sec 6707(a)(3)

Proprietary Material  
Confidentiality Requested

KPMG 0034969

KPMG Peat Marwick LLP

Page 23
Gregg Ritchie
Warner Center
May 28, 1998 ~~May 26, 1998~~

which should have been known) by a tax shelter organizer must be taken into account in determining if reasonable cause exists. A tax shelter organizer is deemed to know all representations known by sellers of the shelter Temp Regs 301 6707-1T Q/A-4

**Issue** Are there other penalties which could apply in this circumstance?

**Answer** It is also possible that the sec 6700 penalty for promotion of an "abuse tax shelter" would apply This penalty is the lesser of $1 000 or 100 percent of the gross income derived (or to be derived) by the promoter for each activity related to the shelter The statute does not define "activity" and no regulations have been issued under this section Sec 6700(a)

**Issue** Did the sec. 6111 registration requirements change as a result of 1997 legislation?

**Answer** Yes, but not with respect to the requirement to register a product which is marketed to individuals. The definition of a sec 6111 tax shelter was broadened with respect to corporate taxpayers Pursuant to new sec 6111(d) if an entity plan, arrangement or transaction has a significant purpose of avoidance or evasion of federal income tax, is offered under terms of confidentiality and the promoters may receive aggregate fees in excess of $100 000; the entity plan, arrangement, or transaction must be registered This provision does not apply to a product which is marketed to individuals provided it is not also offered to corporate taxpayers. Further, even if offered to corporate taxpayers, 6111(d) registration is *not applicable* until regulations or other guidance is issued and, even then would be applicable only if offered under conditions of confidentiality No such guidance has yet been issued

KPMG 0034970

Proprietary Material
Confidentiality Requested